61 F.3d 906
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Elizabeth H. RAMOS, Plaintiff-Appellant,
v.
METROPOLITAN LIFE INSURANCE COMPANY and Lend Lease Trucks,
Inc., Defendants-Appellees.
 No. 95-1463.
 United States Court of Appeals, Seventh Circuit.
 Argued June 9, 1995.
Decided July 18, 1995.
 
 Before CUMMINGS, CUDAHY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Elizabeth Ramos was employed as a district controller by Lend Lease Trucks, Inc. until she ceased working on April 4, 1991. Three days later she filed a complaint in the Circuit Court of St. Joseph County, Indiana, asserting claims for breach of contract against her employer and its insurer Metropolitan Life Insurance Company ("Metropolitan"). A few weeks later, the defendants removed the case to the United States District Court for the Northern District of Indiana, and later that month all parties consented to the entry of final judgment by a magistrate judge. See 28 U.S.C. Sec. 636(c).
 
 
 2
 On June 16, 1994, plaintiff filed an amended complaint asserting claims against both defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1001 et seq. She alleged that defendants wrongly denied her long-term disability benefits to which she was entitled under ERISA. On January 24, 1995, the magistrate judge issued a memorandum and order granting summary judgment to the defendants, resulting in this appeal.
 
 
 3
 Lend Lease has an employee welfare benefit plan subject to ERISA. The plan was funded through a group insurance policy issued by Metropolitan. Lend Lease was the Plan Administrator and Metropolitan served as the Claims Fiduciary for reviewing claims and making decisions as to the eligibility of benefit claimants. The plan granted the Plan Administrator and other Plan fiduciaries discretionary authority to determine eligibility for plan benefits. The plan provided that any interpretation or determination made pursuant to the foregoing discretionary authority be given full force and effect unless it was shown that the determination was arbitrary and capricious. Metropolitan was given sole discretion to decide whether the evidence submitted by a claimant was sufficient to support a claim for long-term disability benefits.
 
 
 4
 The ERISA review section of the plan stated that if a claim was denied, the claimant or his beneficiary could request a review by Metropolitan, which was to re-evaluate all the information before coming to a decision. The term "Full Disability" was defined as meaning that a claimant cannot do her job because of sickness or an injury. The term "Total Disability" was defined as meaning that because of a sickness or an injury, the claimant cannot do her job or any other job for which she is fit by her education, training or experience.
 
 
 5
 In December 1991 Metropolitan received a claim for long-term disability benefits from plaintiff stating that she had been disabled since April 4, 1991, because of chronic costochondritis and fibromyalgia.[1] Lend Lease completed an employer's job description statement providing that in a normal work day plaintiff's job required her sitting for six hours a day, standing for one hour a day, and walking for one hour a day. Lend Lease added that her job as a controller did not require her to crawl, climb, lift or carry more than ten pounds, but that her job required occasional bending, squatting, reaching above shoulder level, and occasional lifting and carrying ten pounds. Her job duties were described as bookkeeping and all accounting functions of a district.[2] During her employment with Lend Lease, Ramos worked in a ground floor office with windows and was free to stand up, stretch, move about, change positions, stroll about her office and leave her office for a walk to the restroom, drinking fountain or coffee room.
 
 
 6
 Plaintiff submitted to Metropolitan the medical records and reports of her treating physicians, Doctors Bulger and Baran, and Roland Lentz, D.O. Plaintiff also submitted to Metropolitan Dr. Bulger's "Attending Physician's Statement of Functional Capacity," where he stated that the primary diagnosis affecting work ability was chronic costochondritis and the secondary diagnosis affecting work ability was fibromyalgia. He added that there were no psychological problems that might interfere with plaintiff's ability to work.
 
 
 7
 Metropolitan submitted Ramos' claim to Underwriting Medical Actuarial Consultants (UMAC), an independent medical reviewer, for an evaluation of plaintiff's medical records and other information in the file. UMAC reviewers were a neurologist, rheumatologist and its "Physician Roundtable." UMAC's consulting neurologist stated that Dr. Bulger's evaluation showed no evidence of spinal stenosis or other significant abnormality. The neurologist concluded that the records did not document any objective abnormality except the pain on palpation of various muscle groups. As to functional capacity, the neurologist stated:
 
 
 8
 In regard to restrictions, someone with fibromyalgia syndrome might be counseled again[st] doing heavy lifting, and might be counseled to change position with some frequency not sitting for long periods of time without altering the posture or position in some respect.
 
 
 9
 The UMAC report concluded that there was insufficient objective presentation to warrant a recommendation of total disability. Consequently, on April 16, 1992, Metropolitan denied plaintiff's claim for long-term disability benefits. In the letter Metropolitan stated that it had reviewed the submitted medical documentation and her job description showing that the job required sedentary activities.
 
 
 10
 In January 1993 plaintiff wrote Metropolitan requesting a review of its denial of her long-term disability claim, but she did not submit any additional medical documentation. Consequently, in February 1993 Metropolitan wrote plaintiff that the medical documentation presented did not substantiate total disability for her occupation, so that her appeal was denied. In October 1993 plaintiff again requested a review of her claim, submitting a copy of a Social Security Administration decision granting her an award of benefits, but again no further medical information was submitted. In November 1993 Metropolitan wrote plaintiff that the Social Security Administration's decision did not substantiate total disability for her occupation as defined by her insurance plan, so that Metropolitan was adhering to its decision to deny her claim for long-term disability benefits.
 
 
 11
 In January 1995, a magistrate judge handed down a 15-page memorandum and order concluding:
 
 
 12
 After careful consideration, the court holds that Metropolitan's decision denying long-term disability benefits to Ramos was reasonably related to the evidence and rationally connected to the terms of the Plan.
 
 
 13
 Therefore Metropolitan's and Lend Lease's motions for summary judgment were granted.
 
 
 14
 The parties agree that the standard of judicial review of Metropolitan's claim determination is whether it was arbitrary and capricious. This is in accord with Allison v. Dugan, 951 F.2d 828, 832 (7th Cir.1992). See also Cuddington v. Northern Indiana Pub. Serv. Co., 33 F.3d 813, 816 (7th Cir.1994). Our review convinces us that Metropolitan did not act in an arbitrary and capricious manner in denying plaintiff's claim for full disability, meaning that because of sickness or an injury she cannot do her job. This conclusion is supported by a consideration of plaintiff's limitations and job requirements.
 
 
 15
 Even plaintiff's physician, Dr. Bulger, stated that plaintiff was precluded only from heavy lifting, operating small vehicles, heavy machinery and electrical equipment. However, her job did not involve any of those activities. He advised that plaintiff had no limitations on her ability to change position from sitting to standing or to reach, grasp or handle. Therefore the district court properly concluded that her job as a controller did not require her to go beyond those restrictions. In addition, her employer, Lend Lease, reported that her job did not require her to crawl, climb, lift or carry more than ten pounds and only occasionally required her to bend, squat, reach above shoulder level and lift items weighing less than ten pounds.
 
 
 16
 Furthermore, the UMAC report stated that there was no evidence of spinal stenosis or other significant abnormality and that none of the records supported any objective abnormality, so that there was no warrant for a recommendation of total disability. Accordingly, Metropolitan determined that Ramos was not eligible for long-term disability benefits because the independent medical consultant, UMAC, determined that plaintiff was capable of performing sedentary activities, which was all her job required.
 
 
 17
 In denying her claim, Metropolitan advised plaintiff that there was insufficient objective documentation presented to warrant a recommendation of Total Disability. Plaintiff did not submit any additional medical documentation to contradict Metropolitan's decision. It is immaterial that Metropolitan denied her claim under the "total disability" standard rather than the "full disability" standard because the former applies to one who cannot perform her job and the latter applies to one who cannot perform her job or any other job. Here UMAC and consequently Metropolitan decided she could perform her Lend Lease job. Therefore she was not entitled to disability benefits under either full or total disability standards. Moreover, merely because others granted plaintiff disability benefits does not show that Metropolitan's decision not to do so was arbitrary and capricious.
 
 
 18
 As we determined in Fuller v. CBT Corp, 905 F.2d 1055, 1058 (1990), a reviewing court should not disturb a challenged denial of benefits unless it is "downright unreasonable." Since the records submitted and the UMAC report showed plaintiff was still capable of performing the sedentary duties required by her job and since she failed to submit objective medical proof of full disability, the magistrate judge's decision was neither arbitrary nor capricious.
 
 
 19
 Plaintiff claims that Metropolitan was required to assess the possibility of a psychiatric basis for her symptoms, but we rejected an identical argument in Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 382-383 (1994).[3] Ramos also argues that even if Metropolitan did not act arbitrarily or capriciously, Lend Lease is still responsible for her disability benefits. Since the district court properly found that Metropolitan did not wrongly deny plaintiff disability benefits, her claim is also barred against Lend Lease. Lend Lease followed proper procedures and its initial grant of benefits to Ramos does not bind it.
 
 
 20
 The decision of the district court granting Metropolitan's and Lend Lease's motion for summary judgment is AFFIRMED.
 
 
 
 [1]
 Fibromyositis is a chronic inflammation of a muscle from an overgrowth of connective tissue. Costochondritis is inflammation of one or more rib cartilages, characterized by pain of the anterior chest wall
 
 
 [2]
 Ramos claims that Metropolitan's representative determined that she was not entitled to benefits before receiving and considering her job description. The record reflects that the representative received Ramos' job description the same day the decision was made. This information does not support a finding that the decision was arbitrary and capricious
 
 
 [3]
 Interestingly, Ramos does not claim to have a psychological disability, only that Metropolitan should have followed UMAC's advice and had her examined. Metropolitan was not obliged, in the face of insufficient objective evidence, to order a psychological examination or an independent examination